**ORIGINA**

53 pew

1    <u>PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY</u>

2    Name __Blan__      __Jeffrey__      __J.__
          (Last)         (First)        (Initial)

3
     Prisoner Number ___V-82054___

4                                                                    **FILED**
     Institutional Address ___"Old Folsom" State Prison, P.O.box 950___

5    ___Folsom , California, 95763.___ **E-filing**              NOV 1 4 2007

6    =============================================
                                                           RICHARD W. WIEKING
7              UNITED STATES DISTRICT COURT          CLERK, U.S. DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA       NORTHERN DISTRICT OF CALIFORN

8    JEFFREY JEROME BLAN
     (Enter the full name of plaintiff in this action.)
9                                         **CV**  **07** No. **5781**
                         vs.                   (To be provided by the clerk of court)
10
     M.C. Kramer,warden.                                              **CRB**
11   _____      PETITION FOR A WRIT
                                     OF HABEAS CORPUS          **(PR)**
12   _____      **AND EVIDENTIARY**
                                     **HEARING REQUEST**
13   _____
14   (Enter the full name of respondent(s) or jailor in this action)
15
16   =============================================
                   <u>Read Comments Carefully Before Filling In</u>

17   <u>When and Where to File</u>

18          You should file in the Northern District if you were convicted and sentenced in one of these

19   counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20   San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma.  You should also file in

21   this district if you are challenging the manner in which your sentence is being executed, such as loss of

22   good time credits, and you are confined in one of these counties.  Habeas L.R. 2254-3(a).

23          If you are challenging your conviction or sentence and you were not convicted and sentenced in

24   one of the above-named fifteen counties, your petition will likely be transferred to the United States

25   District Court for the district in which the state court that convicted and sentenced you is located.  If

26   you are challenging the execution of your sentence and you are not in prison in one of these counties,

27   your petition will likely be transferred to the district court for the district that includes the institution

28   where you are confined.  Habeas L.R. 2254-3(b).

     PET. FOR WRIT OF HAB. CORPUS          - 1 -

007-5781/CRB

1   <u>Who to Name as Respondent</u>

2      You must name the person in whose actual custody you are.  This usually means the Warden or

3 jailor.  Do not name the State of California, a city, a county or the superior court of the county in which

4 you are imprisoned or by whom you were convicted and sentenced.  These are not proper

5 respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7 but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8 custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9 was entered.

10 <u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

11      1. What sentence are you challenging in this petition?

12        (a)   Name and location of court that imposed sentence (for example; Alameda

13            County Superior Court, Oakland):

14     <u>Santa Cruz County Superior Court, Santa Cruz, Ca..</u>

15         Court                 Location

16        (b)   Case number, if known <u>F09958</u>

17        (c)   Date and terms of sentence <u>6/1/05, Seven years.</u>

18        (d)   Are you now in custody serving this term?  (Custody means being in jail, on

19            parole or probation, etc.)       Yes <u>XXX</u> No _____

20            Where? <u>Folsom ,Ca.,</u>

21            Name of Institution: <u>"Old Folsom State Prison"</u>

22            Address: <u>P.O.box 950,Folsom,Ca.,95763</u>

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24 more than one crime, list each crime separately using Penal Code numbers if known. If you are

25 challenging more than one sentence, you should file a different petition for each sentence.)

26     <u>P.C.Sec. 459 and Sec. 667(a)(1)</u>

27

28

3. Did you have any of the following?

    Arraignment:                                 Yes XXX   No _____

    Preliminary Hearing:                     Yes XXX   No _____

    Motion to Suppress:                     Yes XXX   No _____

4. How did you plead?

    Guilty _____   Not Guilty XXX   Nolo Contendere _____

    Any other plea (specify) N/A _____

5. If you went to trial, what kind of trial did you have?

    Jury XXX   Judge alone _____   Judge alone on a transcript _____

6. Did you testify at your trial?                  Yes _____   No _____

7. Did you have an attorney at the following proceedings:

    (a)   Arraignment                     Yes XXX   No _____

    (b)   Preliminary hearing           Yes XXX   No _____

    (c)   Time of plea                    Yes XXX   No _____

    (d)   Trial                           Yes XXX   No _____

    (e)   Sentencing                    Yes XXX   No _____

    (f)   Appeal                       Yes XXX   No _____

    (g)   Other post-conviction proceeding   Yes _____   No XXX

8. Did you appeal your conviction?           Yes XXX   No _____

    (a)   If you did, to what court(s) did you appeal?

        Court of Appeal               Yes XXX   No _____

        Year: 2006        Result: Denied (see attached)

        Supreme Court of California      Yes XXX   No _____

        Year: 2007        Result: Denied (see attached)

        Any other court             Yes XXX   No _____

        Year: 2005        Result: Motion to unseal denied (see Attached)

    (b)   If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS       - 3 -

| | | | | |
|---|---|---|---|---|
| 1 | | petition? | Yes _XXX_ | No_____ |
| 2 | (c) | Was there an opinion? | Yes _XXX_ | No_____ |
| 3 | (d) | Did you seek permission to file a late appeal under Rule 31(a)? | | |
| 4 | | | Yes_____ | No_XXX_ |

5  If you did, give the name of the court and the result:

6  N/A

7

8  9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9  this conviction in any court, state or federal?                    Yes_____    No_XXX_

10  [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11  challenged the same conviction you are challenging now and if that petition was denied or dismissed

12  with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13  for an order authorizing the district court to consider this petition. You may not file a second or

14  subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15  U.S.C. §§ 2244(b).]

16  (a)  If you sought relief in any proceeding other than an appeal, answer the following

17  questions for each proceeding. Attach extra paper if you need more space.

18  I.  Name of Court: _N/A_

19  Type of Proceeding: _N/A_

20  Grounds raised (Be brief but specific):

21  a. _N/A_

22  b._____

23  c._____

24  d._____

25  Result: _N/A_                    Date of Result: _N/A_

26  II.  Name of Court: _N/A_

27  Type of Proceeding: _N/A_

28  Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS          - 4 -

1           a. N/A

2           b.

3           c.

4           d.

5           Result: N/A         Date of Result: N/A

6    III.  Name of Court: N/A

7           Type of Proceeding: N/A

8           Grounds raised (Be brief but specific):

9           a. N/A

10          b.

11          c.

12          d.

13          Result: N/A         Date of Result: N/A

14   IV.  Name of Court: N/A

15          Type of Proceeding: N/A

16          Grounds raised (Be brief but specific):

17          a. N/A

18          b.

19          c.

20          d.

21          Result: N/A         Date of Result: N/A

22     (b)   Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                                  Yes _____   No XXX

24          Name and location of court: N/A

25   **B. GROUNDS FOR RELIEF**

26         State briefly every reason that you believe you are being confined unlawfully. Give facts to

27   support each claim. For example, what legal right or privilege were you denied? What happened?

28   Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

1    need more space. Answer the same questions for each claim.

2         [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3    petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4    499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5         Claim One:  Petitioner's conviction was obtained as the result

6    of ineffectiveness of consel at trial.This violated petiti-

7    oner's right guaranteed by U.S.C.A.(5th,6th & 14th Amend.)
     Supporting Facts:

8         SEE ATTACHMENT BELOW

9

10

11   Claim Two:  N/A

12

13   Supporting Facts:  N/A

14

15

16

17   Claim Three:          N/A

18

19   Supporting Facts:          N/A

20

21

22

23        If any of these grounds was not previously presented to any other court, state briefly which

24   grounds were not presented and why:

25        N/A

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 6 -

1        List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3    of these cases:

4    Strickland v. Washington,466 U.S. 668 (1984)

5    Chambers v. Mississippi,410 U.S. 248 (1973)

6    Younger v. State of Ca.,12 Cal.3d 274 (1974)

7    Do you have an attorney for this petition?                                    Yes_____          No XXX

8    If you do, give the name and address of your attorney:

9    N/A

10       WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11   this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13   Executed on ___10-30-07___

14             Date                                    Signature of Petitioner

15

16

17

18

19.

20   (Rev. 6.02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

# A T T A C H M E N T   T O   W R I T

JEFFREY JEROME BLAN          )          Case No, _____
                            )
                            )
           vs.              )
                            )
                            )
M.C. KRAMER, warden         )
_____)

================================================================
qqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqqq

JEFFREY JEROME BLAN  V-82054
"OLD FOLSOM" STATE PRISON,
P.O.BOX  950
FOLSOM , CALIFORNIA, 95763

# TABLE OF CONTENTS

TABLE OF AUTHORITIES                                          v

PETITION FOR WRIT OF HABEAS CORPUS                           1

VERIFICATION                                                13

MEMORANDUM OF POINTS AND AUTHORITIES                        14

STATEMENT OF FACTS                                          14

ARGUMENT                                                    18

I.    THE FILING OF THIS PETITION ALONG WITH A
      REQUEST THAT IT BE CONSOLIDATED WITH
      PETITIONER'S PENDING DIRECT APPEAL IS THE
      APPROPRIATE PROCEDURE.                                19

II.   PETITIONER WAS DEPRIVED OF THE EFFECTIVE
      ASSISTANCE OF COUNSEL WHEN TRIAL
      COUNSEL FAILED TO ARGUE IN OPPOSITION TO
      THE PEOPLE'S MOTION TO EXCLUDE
      PETITIONER'S STATEMENT TO WITNESS YANG.             20

      A.    Trial Counsel's Performance Fell Below An
            Objective Standard Of Reasonableness When She
            Failed To Offer Petitioner's Statement To Yang As
            Non-Hearsay.                                    22

            1.    Petitioner's statement was a non-hearsay
                  statement not offered for the truth of the matter
                  asserted.                                 23

            2.    Petitioner's statement was a non-hearsay
                  statement related to his state of mind.    24

B.  Trial Counsel's Performance Fell Below An Objective Standard Of Reasonableness When She Failed To Offer Petitioner's Statement To Yang As Non-Hearsay.                                     25

   1.  Petitioner's statement qualified as a contemporaneous statement hearsay exception.   25

   2.  Blan's statement qualified as a state of mind hearsay exception.                        26

C.  Defense Counsel's Failure To Offer Petitioner's Statement To Yang As Non-Hearsay, Or In The Alternative As A Hearsay Exception, Was Not A Reasonable Tactical Decision.                  29

D.  Petitioner Was Prejudiced By Trial Counsel's Ineffective Assistance.                      31

CONCLUSION:                                      32

EXHIBIT A

    911 TAPED TRANSCRIPT

EXHIBIT B

    POLICE REPORT

EXHIBIT C

    INVESTIGATOR'S REPORT

EXHIBIT D

    DECLARATION OF CHIEF INVESTIGATOR

EXHIBIT E

    DECLARATION OF JAMES W. DUFFY

EXHIBIT 1

PROPOSED DECLARATION OF
CHRISTINA ALVAREZ

EXHIBIT 2    LETTER AND PROPOSED
DECLARATION SENT CHRISTINA
ALVAREZ, FEBRUARY 24, 2006

EXHIBIT 3

CORRESPONDENCE SENT
CHRISTINA ALVAREZ, MARCH 2,
2006

## TABLE OF AUTHORITIES

CASES:                                                              PAGE(S):

*In re Marquez,* 1 Cal.4[th] 584 (1992)                              21

*People v. Arguello,* 65 Cal.2d 768 (1967)                          24

*People v. Bolden,* 44 Cal.App.4[th] 707 (1996)                     23

*People v. Edwards,* 54 Cal.3d 787 (1991)                           27

*People v. Hart,* 20 Cal.4[th] 546 (1999)                           21

*People v. Ledesma,* 43 Cal.3d 171 (1987)                           20, 22

*People v. Marchialette,* 45 Cal.App.3d 974 (1975)                  25, 26

*People v. Mendoza Tello,* 14 Cal.4[th] 264 (1997)                  20

*People v. Minifie,* 13 Cal.4[th] 1055 (1996)                       29

*People v. Pearch,* 229 Cal.App. 1282 (1991)                        27

*People v. Pope,* 23 Cal.3d 412 (1979)                              19, 20

*People v. Sanders,* 11 Cal.4[th] 475 (1995)                        24

*People v. Taylor,* 112 Cal.App.3d 348 (1980)                       27

*Strickland v. Washington,* 466 U.S. 668 (1984)                     20, 21,
                                                                    22, 31


## UNITED STATES CONSTITUTIONAL PROVISIONS

Sixth Amendment                                                     10, 20

Fourteenth Amendment                                                10, 20

CALIFORNIA PROVISIONS

California Constitution, article I, section 15          20

California Constitution, article IV, section 10         2, 20

Evidence Code, section 452                              2

Evidence Code, section 1200                             23

Evidence Code, section 1241                             25, 26

Evidence Code, section 1250                             26

Evidence Code, section 1252                             27

Penal Code, section 459                                 3

Penal Code, section 654                                 10

Penal Code, section 666                                 3

Penal Code, section 667                                 3, 10

Penal Code, section 667.5                               3

Penal Code, section 1203                                3, 10

SECONDARY AUTHORITY

Justice Bernard S. Jefferson, Retired, *Jefferson's*
*California Evidence Benchbook* (3rd ed., December 1999)   24, 27

| | |
|---|---|
| PEOPLE OF THE STATE OF<br>CALIFORNIA,<br><br>    Plaintiff and Respondent,<br><br><br>vs.<br><br>JEFFREY JEROME BLAN<br><br>    Defendant and Petitioner | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.: _____<br><br>(SANTA CRUZ CO.<br>SUPERIOR COURT NO.<br>F09958; Related Appeal<br>Pending in No. H028989) |

## PETITION FOR WRIT OF HABEAS CORPUS

## TO THE HONORABLE PRESIDING JUSTICE AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE COURT:

Petitioner, Jeffrey Jerome Blan, by and through his attorney,

James W. Duffy, respectfully petitions this Court for a writ of habeas

corpus and by this verified petition sets forth the following facts and

causes for issuance of said writ:

///

1

## I.

Petitioner Jeffrey Jerome Blan is presently unlawfully confined by the Director of Corrections at California State Prison, San Quentin in San Quentin, California. Petitioner is serving a sentence of seven years in state prison, which was unlawfully imposed by the Superior Court for Santa Cruz County in case number F09958 on Jun 1, 2005.

## II.

This petition is being filed in this court pursuant to its original habeas corpus jurisdiction. (California Constitution, article VI, §10.)

## III.

The present petition is being filed in conjunction with Petitioner's direct appeal in H028989. No other appellate proceedings exist with regard to the present confinement. No other petitions have been filed in any court with respect to this judgment.

## IV.

In order to avoid unnecessary duplication, petitioner will rely in part on the record on appeal which has been filed in his attendant appeal. Hence, petitioner respectfully requests this court to take judicial notice of the transcripts, files, briefs, motions, and records in H028989. (Evid. Code, §§452, subd. (d)(1), 453, 459.)

2

## V.

On April 12, 2006, petitioner was charged by the third criminal
information filed in Santa Cruz County Superior Court. (CT 286-
287.)  The information charged him in Count 1 with entering an
inhabited dwelling house and inhabited portion of a building with the
intent to commit larceny in violation of Penal Code, section 459, 1st
degree, felony, and in Count 2 with petty theft with a prior conviction
for violation of Penal Code, section 666, for which he served a term of
imprisonment, in violation of Penal Code, section 666, felony.  (CT
286-287.)  It was further alleged that:  petitioner was previously
convicted in the State of California of violation of Penal Code, section
666, for which he served a term of imprisonment as a condition of
probation (CT 287); petitioner had suffered two strike priors within
the meaning of Penal Code, section 667, subdivisions (b) – (i), one for
burglary and one for robbery (CT 287-288); petitioner had suffered
two prison priors within the meaning of Penal Code, section 667.5(b)
(CT 288); petitioner has suffered two prior serious felony convictions
within the meaning of Penal Code, section 667(a)(1) (CT 288-289);
and petitioner was convicted of two felonies, burglary and robbery,
within the meaning of Penal Code, section 1203(e)(4).  (CT 289.)

3

## VI.

The following is a summary of the factual background of the petitioner's matter:

On August 10, 2004, at about 1:00 am, Alan Yang went to the apartment of his friend, Emily Enns at 141 Chestnut Street, apartment no. 114. (RT 308, 334, 336.) As he approached the apartment he saw a pair of feet and legs coming out of her apartment window. (RT 337, 362.) When he got within approximately five feet of the suspect's location, he observed a male adult standing by the window (RT 363) and setting something down on the ground. (RT 338.) The suspect picked-up the window screen and attempted to affix it to the window. (RT 337, 353, 373.) Yang asked the suspect questions and engaged him in conversation. (RT 363, 364, 374.) The suspect told Yang that "he is playing a trick on his friends." (See Reporter's Transcript exhibit attached to Motion to Augment, ordered November 10, 2005 ("RTMA exhibit"), p. 8; see also Santa Cruz Police Department report, Case No. 04S-08697 ("Police Report"), a true and correct copy located in defense counsel's file is attached as exhibit B and incorporated by reference, p. 4 ["The black male told him something to the effect of, he was playing a trick on his friend"].) Yang asked

4

the suspect "Who lives here" and the suspect replied with the name of

Eric. (RTMA exhibit, p. 8; see also defense counsel investigator

report of Erin Haney ("Investigator's Report"), dated October 28,

2004, a true and correct copy located in defense counsel's file is

attached as exhibit C and incorporated by reference, p. 2 [Yang could

not recall if the suspect identified his friend as "Eric" or "Scott"]; see

also exhibit D attached hereto and incorporated by reference, a true

and correct copy of the declaration of the chief investigator for the

Santa Cruz County Public Defender's Office, verifying that Erin

Haney worked for his office at the time of the report, but is no longer

employed there.) Yang testified that he "remember[ed] Eric, because

I knew there was an Eric at the complex, but not in that particular

apartment. (RTMA exhibit, pp. 8-9.) And I told him Eric does not

live here, what are you doing, and he kept trying to tell me he was

playing a trick on his friends." (RTMA exhibit, pp. 8-9; Investigator's

Report, exhibit C, p. 2 [Yang told the suspect, "No, your friends don't

live here"]; Chief Investigator's Declaration, exhibit D.) Yang

testified that he knew Erik lived in the complex because he was

handicapped, and he had this big, red, Chevy truck. (RTMA exhibit,

p. 9; see also Investigator's Report, exhibit C, p. 2; Chief

Investigator's Declaration, exhibit D.)

Yang called "911" and gave a description of the suspect. (RT

340.) Yang told the 911 dispatcher that the suspect is "talking to me

right outside and I saw him climbing out the window." (A true and

correct copy of the 911 taped transcript located in defense counsel's

file ("911 taped transcript") is attached as exhibit A and incorporated

by reference, p. 2.) Yang told the dispatcher that "I am outside, I am

outside right now and I saw him climbing out the window." (Exhibit

A, p. 2.) Yang observed the suspect put the object that he initially set

down on the ground into his pocket. (RT 338.) Yang directed the

suspect to "[d]rop what's in your pockets and leave." (RT 339.) The

suspect began to walk away and Yang followed. (RT 342, 374.) The

suspect turned around in the direction of Yang, walked past Yang and

then jumped a fence. (RT 34, 343, 344, 367.) Yang followed the

suspect from the other side of the fence, while keeping the suspect

within his vision over the fence. (RT 344.) He lost sight of the

suspect when the suspect jumped another fence (RT 345), although he

could hear what he described as "change in a metal jar, or just change

rattling." (RT 345.)

6

A Santa Cruz Police Officer responded to the incident (RT 526) and observed a suspect walk up a flight of stairs in an apartment complex and "kind of" crouch down between two apartment doors. (RT 528, 529.) The officer contacted the suspect and noted that he appeared slightly out of breath and had perspiration around his face, neck and shoulder areas. (RT 530-531.) The suspect told the officer that he was with "college kids" and that "they had told him to 'mess with their papers.'" (See Police Report, exhibit B, p. 10.)

Yang was transported to the location of the suspect and identified the petitioner as the responsible party. (RT 309-310.) Petitioner was arrested and found to have loose change in his right pants pocket (RT 311), believed to be in amount was $22.50 (RT 509): one fifty cent piece; 83 quarters; ten dimes; and five nickels. (RT 509.)

Emily Enns had been present in the apartment at the time of the offense (RT 385, 386, 387, 389), but did not hear anything unusual. (RT 390, 393.) Enns testified that she did not "know anyone in the apartment complex who would want to play a trick" on her. (ART 259.)

7

Enns testified that the apartment complex buildings "pretty

much look the same," having the same color, size and landscaping.

(ART 262.) However, on redirect, Enns testified that her apartment

building "looks a little bit different" from the other buildings.

(Augmented Reporter's Transcript ("ART") 263.)

Enns' roommate, Joanne Chou, indicated that she lived in the

bedroom where entry had occurred (RT 398-402) and had left the

apartment at about 11:00 p.m., leaving her bedroom door and window

open. (RT 399.) She noted that a metal tin container that was in her

room, containing about $10.00 in change, mostly quarters (RT 401-

404), was missing. (RT 407.)

The maintenance supervisor of the Chestnut Street Apartments

(RT 540) testified that he recognized petitioner as having previously

slept in one of the vacant units (RT 541), Building 153, apartment 139

(RT 546, 550), either during the month of July, 2004 (RT 544), or one

or two weeks before August 13, 2004. (RT 551, 552.)

## VII.

Petitioner was represented at trial by Christina Alvarez, Santa

Cruz County Public Defender's Office. People's motion in limine,

no. 7, moved the trial court to exclude any questions to Yang related

8

to petitioner's inquiry about an Eric because it is hearsay and not

relevant. (RT 25; CT 271.) Trial counsel's performance fell below an

objective standard of reasonableness because she did not file any

opposition to the People's motion nor does the court record reflect

that she posed any oral argument in opposition to the People's motion.

The Court record does not reflect that she argued that the evidence

was relevant because it went to petitioner's specific intent prior to

entering the apartment. The Court record does not reflect that she

argued that petitioner's statement to Yang was non-hearsay, or in the

alternative, qualified as a hearsay exception.

## XIII.

A jury actually heard petitioner's statement to Yang at his first

jury trial. (RTMA exhibit, p. 8.) Trial counsel's closing argument

manifested the defense theory of the case, which was that petitioner

did not form the requisite specific intent to commit a burglary before

he entered the apartment. (ART 357, 358, 359, 365, 366, 370.) This

resulted in a hung jury. (CT 218.)

At petitioner's second trial, petitioner's statement to Yang was

excluded and the defense theory suffered due to this. Under these

circumstances, it is "reasonably probable" that the jury would have

9

acquitted petitioner of the burglary offense if it heard petitioner's statements to Yang. Indeed, the People modified its pleading theory for the second trial by alleging Count 2, petty theft with a prior. (CT 42, 286-287.)

## IX.

On April 15, 2005, a jury convicted petitioner of 1st degree burglary and petty theft with a prior conviction, felonies. (RT 754.) The jury found the special allegations to be true pursuant to Penal Code section 667, subdivisions (a) and (b), Penal Code section 667, subdivision (b) through (i), and Penal Code section 1203, subdivision (b)(4). (RT 824-826.) The Court found the identity of the prior convictions to be true and that two prior convictions were for serious or violent felonies. (RT 827-828.)

On May 31, 2005, the district attorney moved to strike one of petitioner's prior strike convictions. (RT 1021.) On June 1, 2005, the Court sentenced petitioner to the mitigated term of two years and an additional five year term under Penal Code section 667, subdivision (a)(1), for a total of seven years. (RT 1254.) The Court stayed the punishment as to Count 2 pursuant to Penal Code section 654. (RT 1256.)

10

# X.

In light of the foregoing, petitioner was deprived of the
effective assistance of counsel guaranteed to him by the Sixth and
Fourteenth Amendments to the United States Constitution. The
incompetence of defense counsel was committed by the failure to file
any opposition to the People's motion in limine, no. 7, to exclude
petitioner's statement to witness Yang, or as the court record reflects,
she made absolutely no oral argument in opposition that the evidence
was admissible as non-hearsay, or in the alternative, as a hearsay
exception.

Petitioner was prejudiced by trial counsel's failure to argue that
this evidence was admissible. During petitioner's first trial, a jury
actually heard the evidence of petitioner's statement to Yang (RTMA
exhibit, p. 8), which returned a hung jury. (ART 357, 358, 359, 365,
366, 370; CT 218.) Significantly, the People modified its pleading
theory for the second trial by alleging a second substantive offense of
petty theft with a prior. (CT 42, 286-287.)

11

## XI.

Petitioner has no plain, speedy, or adequate remedy at law, save this petition.

WHEREFORE, petitioner prays that this court: (1) issue an order consolidating this petition with the related pending appeal in H028989; (2) take judicial notice of the transcripts, files, briefs, motions, and records in H028989; (3) issue an order to show cause to the Director of the Department of Corrections to inquire into the legality of petitioner's confinement; (4) issue an order for the taking of such evidence as may be necessary for the proper consideration of this petition; (5) issue the writ and reverse petitioner's conviction for burglary and vacate his sentence; and (6) grant petitioner whatever alternative or further relief as may be appropriate in the interests of justice.

Dated:                                        Respectfully Submitted,

Jeffrey Jerome Blan

12

## **VERIFICATION**

I, James W. Duffy, declare and state as follows:

I am an attorney duly admitted and licensed to practice before all courts of this state; I have my professional office at 700 Frederick Street, Suite 306, Santa Cruz, California 95062.

I am counsel for petitioner in the foregoing petition and I am authorized to file this petition. I make this verification on petitioner's behalf since he is being confined outside of Santa Cruz County.

I have read the foregoing petition for Writ of Habeas Corpus, the Statement of Facts and Argument in support thereof, the record on appeal, and the exhibits attached to this petition. All facts alleged in the above petition for a writ of habeas corpus, not otherwise supported by citations to the record and the attached exhibits, are true of my own personal knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of July, 2006, at Santa Cruz, California.

JAMES W. DUFFY

13

## MEMORANDUM OF POINTS AND AUTHORITIES

## STATEMENT OF FACTS

On August 10, 2004, at about 1:00 am, Alan Yang went to the
apartment of his friend, Emily Enns at 141 Chestnut Street, apartment
no. 114. (RT 308, 334, 336.) As he approached the apartment he saw
a pair of feet and legs coming out of her apartment window. (RT 337,
362.) When he got within approximately five feet of the suspect's
location, he observed a male adult standing by the window (RT 363)
and setting something down on the ground. (RT 338.) The suspect
picked-up the window screen and attempted to affix it to the window.
(RT 337, 353, 373.) Yang asked the suspect questions and engaged
him in conversation. (RT 363, 364, 374.) The suspect told Yang that
"he is playing a trick on his friends." (Reporter's Transcript exhibit
attached to Motion to Augment ("RTMA exhibit"), p. 8; see also
Santa Cruz Police Department report, Case No. 04S-08697 ("Police
Report"), a true and correct copy that was located in defense counsel's
file is attached as exhibit B and incorporated by reference, p. 4 ["The
black male told him something to the effect of, he was playing a trick
on his friend"].) Yang asked the suspect "Who lives here" and the
suspect replied with the name of Eric. (RTMA exhibit, p. 8; see also

14

defense counsel's investigator's report ("Investigator's Report"),

dated October 28, 2004, a true and correct copy of which is attached

as exhibit C and incorporated by reference, p. 2 [Yang could not recall

if the suspect identified his friend as "Eric" or "Scott"]; see also the

Chief Investigator's Declaration, a true and correct copy of which is

attached as exhibit D and incorporated by reference.)  Yang testified

that he "remember[ed] Eric, because I knew there was an Eric at the

complex, but not in that particular apartment.  And I told him Eric

does not live here, what are you doing, and he kept trying to tell me he

was playing a trick on his friends." (RTMA exhibit, pp. 8-9;

Investigator's Report, exhibit C, p. 2 [Yang told the suspect, "No,

your friends don't live here"]; Chief Investigator's Declaration,

exhibit D.)  Yang testified that he knew Erik lived in the complex

because he was handicapped, and he had this big, red, Chevy truck.

(RTMA exhibit, p. 9; see also Investigator's Report, exhibit C, p. 2;

Chief Investigator's Declaration, exhibit D.)

Yang called "911" and gave a description of the suspect.  (RT

340.)  Yang told the 911 dispatcher that the suspect is "talking to me

right outside and I saw him climbing out the window."  (A true and

correct copy of the 911 taped transcript located in defense counsel's

15

file ("911 taped transcript") is attached as exhibit A and incorporated

by reference, p. 2.) Yang told the dispatcher that "I am outside, I am

outside right now and I saw him climbing out the window." (See 911

taped transcript, exhibit A, p. 2.) Yang observed the suspect put the

object that he initially set down on the ground into his pocket. (RT

338.) Yang directed the suspect to "[d]rop what's in your pockets and

leave." (RT 339.) The suspect began to walk away and Yang

followed. (RT 342, 374.) The suspect turned around in the direction

of Yang, walked past Yang and then jumped a fence. (RT 34, 343,

344, 367.) Yang followed the suspect from the other side of the fence,

while keeping the suspect within his vision over the fence. (RT 344.)

He lost sight of the suspect when the suspect jumped another fence

(RT 345), although he could hear what he described as "change in a

metal jar, or just change rattling." (RT 345.)

A Santa Cruz Police Officer responded to the incident (RT 526)

and observed a suspect walk up a flight of stairs in an apartment

complex and "kind of" crouch down between two apartment doors.

(RT 528, 529.) The officer contacted the suspect and noted that he

appeared slightly out of breath and had perspiration around his face,

neck and shoulder areas. (RT 530-531.) The suspect told the officer

that he was with "college kids" and that "they had told him to 'mess with their papers.'" (See Police Report, exhibit B, p. 10.)

Yang was transported to the location of the suspect and identified petitioner as the responsible party. (RT 309-310.) Petitioner was arrested and found to have loose change in his right pants pocket (RT 311), believed to be in amount was $22.50 (RT 509): one fifty cent piece; 83 quarters; ten dimes; and five nickels. (RT 509.)

Emily Enns had been present in the apartment at the time of the offense (RT 385, 386, 387, 389), but did not hear anything unusual. (RT 390, 393.) Enns testified that she did not "know anyone in the apartment complex who would want to play a trick" on her. (ART 259.)

Ms. Enns testified that the apartment complex buildings "pretty much look the same," having the same color, size and landscaping. (ART 262.) On redirect, Enns testified that her apartment building "looks a little bit different" from the other buildings. (ART 263.)

Enns' roommate, Joanne Chou, indicated that she lived in the bedroom where entry had occurred (RT 398-402) and had left the apartment at about 11:00 p.m., leaving her bedroom door and window

17

open.  (RT 399.)  She noted that a metal tin container that was in her

room, containing about $10.00 in change, mostly quarters (RT 401-

404), was missing.  (RT 407.)

The maintenance supervisor of the Chestnut Street Apartments

(RT 540) testified that he recognized petitioner as having previously

slept in one of the vacant units (RT 541), Building 153, apartment 139

(RT 546, 550), either during the month of July, 2004 (RT 544), or one

or two weeks before August 13, 2004.  (RT 551, 552.)

## ARGUMENT

The record establishes that trial counsel Alvarez did not file any

opposition to People' motion to exclude petitioner's statement to

witness Alan Yang nor did she make an oral argument in opposition.

According to trial counsel, she believed petitioner's statement was

hearsay and inadmissible.  (See Declaration of James W. Duffy, a true

copy of which is attached hereto as exhibit E and incorporated by

reference, Paragraph 5.)  However, she later advised that the subject

People's Motion was discussed in the judge's chambers.  (See exhibit

E, Paragraph 10.)  On March 2, 2006, petitioner's counsel sent trial

counsel correspondence memorializing the previous conversations and

requested that she communicate with petitioner's counsel to draft an

accurate declaration for her signature. (See exhibit E, Paragraph 11;
see March 2, 2006 letter attached thereto as exhibit 3 and incorporated
by reference.) She did not respond to this correspondence. (See
exhibit E, Paragraph 11.)

Petitioner contends that filing an opposition memorandum of
points and authorities to the Peoples' Motion in limine, no. 7, would
have been meritorious, and there was no reasonable tactical reason to
refrain from making such argument. The conclusion is unavoidable
that petitioner was deprived of the effective assistance of counsel to
the extent that the prosecution would have been unable to convict
petitioner of burglary had trial counsel argued that petitioner's
statement to witness Yang was admissible evidence. Petitioner now
establishes this conclusion.

## I.

## THE FILING OF THIS PETITION ALONG WITH A REQUEST THAT IT BE CONSOLIDATED WITH PETITIONER'S PENDING DIRECT APPEAL IS THE APPROPRIATE PROCEDURE.

Petitioner is filing this petition in the first instance in this court
because his direct appeal, H028989, is pending before this Court. In
employing this procedure, petitioner has sought to comply with the
principles enunciated by the California Supreme Court. Thus, in

19

*People v. Pope* (1979) 23 Cal.3d 412, the Court discussed the appropriate legal mechanism for raising the issue of ineffective assistance of counsel. In relevant part, the court held that judicial economy is best served if a petition for habeas corpus is joined with the direct appeal. (*Id.,* at pp. 426-427, fn. 17; see also *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266-267.)

In light of the guidelines set forth in *Pope,* petitioner respectfully requests this court to exercise its original habeas corpus jurisdiction pursuant to Article VI, section 10 of the California Constitution. In this way, judicial economy will be served by the simultaneous resolution of both this petition and the related appeal. (*People v. Pope, supra,* 23 Cal.3d at pp. 426-427, fn. 17.)

## II.

### PETITIONER WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO ARGUE IN OPPOSITION TO THE PEOPLE'S MOTION TO EXCLUDE PETITIONER'S STATEMENT TO WITNESS YANG.

Criminal defendants have the right to the assistance of counsel under both the Sixth Amendment and Fourteenth Amendment to the United States Constitution and article I, section 15, of the California Constitution. (*People v. Ledesma* (1987) 43 Cal.3d 171, 215.) This

20

entitles him not to some bare assistance but rather to effective

assistance. (e.g., *Strickland v. Washington* (1984) 466 U.S. 668, 686.)

Defense counsel's performance was deficient if it fell below an

objective standard of reasonableness, and if a reasonable probability

exists that, but for counsel's unprofessional errors, the result of the

proceeding would have been more favorable.

In *In re Marquez* (1992) 1 Cal.4th 584, 602-603, the California

Supreme Court, quoting *Strickland v. Washington, supra,* 466 U.S. at

pp. 693-694, stated as follows:

> There are two components to a claim by a defendant that
> his counsel's assistance was so defective as to require
> reversal of a conviction or death sentence. [Citations.]
> 'First, the defendant must show that counsel's performance
> was deficient, representation fell below an objective standard
> of reasonableness.' [Citations.] In evaluating a defendant's
> showing of incompetence, we accord great deference to the
> tactical decision of trial counsel. 'A fair assessment of attorney
> performance requires that every effort be made to
> eliminate the distorting effects of hindsight, to reconstruct
> the circumstances of counsel's challenged conduct, and to
> evaluate the conduct from counsel's perspective at the time.'
> [Citations.]
>
> The second component requires that the defendant show
> prejudice resulting from counsel's alleged deficiencies.
> 'It is not enough for the defendant to show that the errors
> had some conceivable effect on the outcome of the
> proceeding.... The defendant must show that there is a
> reasonable probability that, but for counsel's unprofessional

21

errors, the result of the proceeding would have been different.
A reasonable probability is a probability sufficient to
undermine confidence in the outcome.' (Accord, *People v.
Hart* (1999) 20 Cal.4th 546, 624.)

The California Supreme Court stated in *People v. Ledesma,
supra,* 43 Cal.3d 171, that it is the defendant's burden to establish

that: (1) his trial counsel's performance was below the objective

standard of prevailing professional norms; and (2) he was prejudiced

by counsel's failings. (*Id.,* at pp. 216-217.) An essential skill of a

trial lawyer is the requisite skills and knowledge of the hearsay rules

of evidence and their exceptions. (*Strickland v. Washington, supra,*

466 U.S. at p. 688 ["Counsel also has a duty to bring to bear such skill

and knowledge as will render the trial a reliable adversarial testing

process"].)

## A.    Trial Counsel's Performance Fell Below An Objective Standard Of Reasonableness When She Failed To Offer Petitioner's Statement To Yang As Non-Hearsay.

People's motion in limine, no. 7, moved the Court to exclude

any questions to witness Alan Yang related to petitioner's inquiry

about Eric on the grounds that it is inadmissible hearsay and not

relevant. (RT 25; CT 271.) Trial counsel's performance fell below an

objective standard of reasonableness because she did not file any

22

opposition to the People's motion nor does the court record reflect

that trial counsel posed any oral argument in opposition. The Court

tentatively ruled that it would sustain the objection if the People

timely objected because it is a "self-serving statement" "offered to

prove the truth of the matter asserted." (RT 25-26.) The Court

directed defense counsel not to ask Yang any questions related to

Erik, subject to further arguments. (RT 26; CT 27.)

> **1.    Petitioner's statement was a non-hearsay statement not offered for the truth of the matter asserted.**

Hearsay evidence is "evidence of a statement that was made

other than by a witness while testifying at the hearing and that is

offered to prove the truth of the matter stated." (Evid. Code, §1200,

subd. (a).) If the statement is offered for a purpose other than to assert

the truth of the matter, then it is not hearsay. (*People v. Bolden*

(1996) 44 Cal.App.4th 707, 714.)

People's in limine motion, no. 7, moved the Court to exclude

petitioner's statement to witness Yang because it is hearsay and not

relevant. (CT 271.) Yang testified at petitioner's first trial that when

he confronted petitioner outside the apartment window, petitioner told

him that "he is playing a trick on his friends" (RTMA exhibit, p. 8)

23

and petitioner told him that Eric lived in that apartment. (RTMA,

exhibit p. 8.) Petitioner's statement to Yang is not hearsay because it

is not offered to prove the truth of the facts asserted, namely that

petitioner was actually playing a trick on Eric, who he believed lived

in that apartment. (RTMA exhibit, p. 8.) It was relevant because it

went to an element of the offense, to wit: petitioner's specific intent

prior to entering the residence.

### 2.    Petitioner's statement was a non-hearsay statement related to his state of mind.

A declarant's statement that is not a direct assertion of his then-

existing state of mind, emotion, or physical sensation is not hearsay if

the statement asserts other facts and is offered as circumstantial

evidence of the declarant's state of mind. In this latter situation,

principles of relevancy and circumstantial evidence arise, not the

hearsay rule. (*People v. Sanders* (1995) 11 Cal.4th 475, 517; *People v*

*Arguello* (1967) 65 Cal.2d 768, 773; *Jefferson's Evidence* §14.11, pp.

211-212.)

Petitioner's statement to Yang that he was playing a trick on

Eric, who he believed lived in that apartment, occurred when

petitioner was found coming out of the victims' apartment and

attaching the screen to the window. (RT 337, 362; RTMA exhibit, p.

24

8; 911 Taped Transcript, exhibit A, pp. 1, 2; Police Report, exhibit B,

p. 4; Investigator's Report, exhibit C, pp. 1, 2; Chief Investigator's

Declaration, exhibit D.) Petitioner's statement is not hearsay because

it was not a direct assertion of his state of mind, but rather an assertion

of other circumstantial facts about his state of mind, namely that he

thought he was playing a trick on Erik, who he believed lived in that

apartment. (RTMA exhibit, p. 8; Police Report, exhibit B, p. 4;

Investigator's Report, exhibit C, pp. 1, 2; Chief Investigator's

Declaration, exhibit D.) It is probative because it goes to petitioner's

specific intent prior to entering the apartment.

**B.    Trial Counsel's Performance Fell Below An Objective Standard Of Reasonableness When She Failed To Offer Petitioner's Statement To Yang As Non-Hearsay.**

### 1.    Petitioner's statement qualified as a contemporaneous statement hearsay exception.

To qualify as a contemporaneous statement hearsay exception,

the statement must be:

(a)    "offered to explain, qualify, or make understandable

conduct of the declarant; and

25

(b)    was made while the declarant was engaged in such

conduct." (Evid. Code, §1241; *People v. Marchialette*

(1975) 45 Cal.App.3d 974, 979-981.)

Yang's testimony qualified as a contemporaneous statement

hearsay exception because it was offered to explain and make

understandable why petitioner was exiting the apartment window.

(RT 337, 362, 363; Police Report, exhibit B, p. 4; Investigator's

Report, exhibit C, pp. 1, 2; Chief Investigator's Declaration, exhibit

D.) Further, the statement was made while petitioner was "engaged in

such activity" of having just exited the apartment window and

replacing the screen. (RTMA exhibit, p. 8; Police Report, exhibit B,

p. 4; Investigator's Report, exhibit C, pp. 1, 2; Chief Investigator's

Declaration, exhibit D.) (See Evid. Code, §1241; *People v.*

*Marchialette, supra,* 45 Cal.App.3d at pp. 979-981.)

### 2.    Blan's statement qualified as a state of mind hearsay exception.

An out of court statement qualifies as a hearsay exception if it

expresses the declarant's then-existing state of mind, emotion, or

physical sensation." (Evid. Code, §1250, subd. (a).) To qualify,

"(1) [t]he evidence must be offered "to prove the declarant's state of mind, emotion, or physical sensation at that time or at any time when it is itself an issue in the action; or

(2) The evidence is offered to prove or explain acts or conduct of the declarant." (Ibid.)

If the declarant's state of mind, emotion, or physical sensation at the time the declarant makes a statement is an issue in a case, then a statement directly asserting his then-existing state of mind, emotion, or physical sensation is relevant. (*People v. Taylor* (1980) 112 Cal.App.3d 348, 364; see also *Jefferson's Evidence* §14.6, at p. 210..) However, the state of mind hearsay exception must be excluded if it is made under circumstances indicating lack of trustworthiness; if there was present a strong motive for the declarant to misrepresent or manufacture evidence; or is unreliable because of a strong showing of its self-serving nature. (Evid. Code, §1252; *People v. Edwards* (1991) 54 Cal.3d 787; *People v. Pearch* (1991) 229 Cal.App.3d 1282; *Jefferson's Evidence* §14.8 at p. 210.)

Petitioner's statement to Yang qualifies as a state of mind hearsay exception because it could have been offered to prove petitioner's state of mind at the time his state of mind was at issue,

27

namely his specific intent prior to entering the apartment. Yang

would have testified that when he confronted petitioner, he told Yang

that he was playing a trick on Eric, who he believed lived in that

apartment. (RTMA exhibit, p. 8; Police Report, exhibit B, p. 4;

Investigator's Report, exhibit C, pp. 1, 2; Chief Investigator's

Declaration, exhibit D.)  Petitioner's statement to Yang would also

have been offered as evidence to prove and explain his actions and

conduct of why he entered the apartment.

       This evidence was trustworthy because Yang and a Patricia

Ross, apartment manager (RT 27; CT 277), could have testified that

an Eric did indeed live in the victims' apartment complex at one time.

(RT 28; CT 283; RTMA exhibit, pp. 8, 9; Investigator's Report,

exhibit C, p. 2 ["Alan [Yang] commented that there is a resident

named Eric and another one named Scott that live in the apartment

complex"]; Chief Investigator's Declaration, exhibit D.)  It is

expected that Ross would have testified that Eric lived in "unit that's

exactly like the unit ... [as the victims' apartment] and was "directly

behind that which ... [the victims] lived," "a corner unit."  (RT 28.)  It

is understandable that petitioner was mistaken regarding the apartment

building that Eric lived because all the apartment buildings "pretty

much looks the same." (ART 262.) Although Yang indicated to the

investigator that "...he did not believe that the suspect man thought it

was Eric or Scott's apartment" (Investigator's Report, exhibit C, p. 2;

Chief Investigator's Declaration, exhibit D), his testimony indicated

that petitioner's statement did not appear to have been quickly

manufactured because petitioner appeared to Yang to have a low

intellectual functioning ability. Yang specifically testified that

petitioner "did not answer questions sharply and quickly" and agreed

with a characterization that petitioner was not "the brightest cookie."

(RTMA exhibit, p. 37.) Petitioner's statement qualified as a state of

mind hearsay exception and should have been admitted at his second

trial. (*People v. Minifie* (1996) 13 Cal.4th 1055.)

## C. Defense Counsel's Failure To Offer Petitioner's Statement To Yang As Non-Hearsay, Or In The Alternative As A Hearsay Exception, Was Not A Reasonable Tactical Decision.

Petitioner's trial counsel, Christina Alvarez, was contacted to

explain why she did not pose any opposition to People's in limine

motion, no. 7. On October 3, 2005, Ms. Alvarez advised that she

thought she did in fact argue that this evidence was admissible, but

could not recall. However, she did not believe that the

contemporaneous statement hearsay exception was applicable because

29

she thought petitioner's statement to Yang was hearsay and considered untrustworthy. (See Declaration attached hereto as exhibit D, and incorporated by reference, Paragraph 5.) On October 19, 2005, Ms. Alvarez expressed a willingness to execute a declaration that relates to her not arguing that petitioner's statement to Yang be admitted as a contemporaneous statement exception to the hearsay rule. (See exhibit E, Paragraph 6.) On January 30, 2006, a proposed declaration was sent Ms. Alvarez, requesting that she execute it if accurate. (See exhibit E, Paragraph 7, and the January 30, 2006 correspondence and proposed declaration sent to Ms. Alvarez attached thereto as exhibit 1 and incorporated by reference.) Ms. Alvarez did not respond. A second letter and declaration were sent Ms. Alvarez on February 24, 2006. (See exhibit E, Paragraph 8, and February 24, 2006 correspondence and proposed declaration attached thereto as exhibit 2 and incorporated by reference.) On February 28, 2006, Ms. Alvarez advised that the declaration sent her was inaccurate and that she had previously advised that People's Motion in Limine No. 7 was discussed in judge's chambers. (See exhibit E, Paragraph 10.) Ms. Alvarez expressed an unwillingness to communicate further regarding this subject and was unwilling to execute any declaration. (See

exhibit E, Paragraph 10.) On March 2, 2006, correspondence was
sent to Ms. Alvarez that reiterated the contents of the foregoing
communications and requested that she make any corrections to her
proposed declaration that she desired. (See exhibit E, Paragraph 11,
and exhibit 3 attached thereto.) Ms. Alvarez did not respond. (See
exhibit E, Paragraph 11.)

There can be no tactical reason for counsel's omissions.
Indeed, petitioner's statements formed the defense theory of the case,
which was that petitioner lacked the larcenous specific intent prior to
entering the residence. (ART 357, 358, 359, 365, 366, 370.)

### D.    Petitioner Was Prejudiced By Trial Counsel's Ineffective Assistance.

As stated above, it is not sufficient merely to show that trial
counsel erred; it must also be shown that "...there is a reasonable
probability that, but for counsel's unprofessional errors, the result of
the proceeding would have been different." (*Strickland v.
Washington, supra,* 466 U.S. at pp. 693-694.)

Petitioner was prejudiced by trial counsel's ineffective
assistance because it is reasonably probable that a more favorable
result would have occurred, but for defense counsel's error. Indeed,
petitioner's first trial admitted this evidence and the trial ended with a

31

hung jury. (CT 218.) This defense theory significantly suffered

without the admission of petitioner's statements to Yang (RT 589,

590, 591, 592), and the second trial resulted in petitioner's conviction.

(RT 754.)

## **CONCLUSION:**

For the reasons expressed above, petitioner respectfully

requests that this court grant his writ and reverse the burglary

judgment.

# PROOF OF SERVICE BY MAIL

I, TONY GOODRUM , AM A RESIDENT OF FOLSOM STATE PRISON IN THE COUNTY OF SACRAMENTO, STATE OF CALIFORNIA. I AM OVER THE AGE OF 18 YEARS, AND I AM/AM NOT A PARTY TO THIS ACTION.

MY PRISON NUMBER IS: T-86808

MY PRISON ADDRESS IS: **P.O. BOX 950, Folsom, Ca. 95763**

ON or about 10/30/07 , 2007, I SERVED A COPY OF THE FOLLOWING DOCUMENTS

> Writ of Habeas Corpus
> Informa Pauperis

ON THE FOLLOWING PARTIES BY PLACING THE DOCUMENTS IN A SEALED ENVELOPE WITH POSTAGE FULLY PAID, IN THE UNITED STATES MAIL, IN A DEPOSIT BOX SO PROVIDED AT FOLSOM STATE PRISON (MAILBOX RULE), FOLSOM, CALIFORNIA, ADDRESSED AS FOLLOWS:

> United States District Court
> Northern District of California
>
> 450 GOLDEN GATE AVE.
>
> SAN FRANSISCO, CA, 94102-3483

THERE IS DELIVERY SERVICE BY THE UNITED STATES MAIL AT THE PLACE SO ADDRESSED, AND/OR THERE IS REGULAR COMMUNICATION BY MAIL BETWEEN THE PLACE OF MAILING AND THE PLACE SO ADDRESSED.

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED October 30th, , 2007, AT FOLSOM, CALIFORNIA..