EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
LISA H. ASHLEY OTT
Deputy Attorney General
State Bar No. 164811
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5978
  Fax: (415) 703-1234
Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **JEFFREY JEROME BLAN,** <br><br> Petitioner, <br><br> v. <br><br> **M. C. KRAMER, Warden,** <br><br> Respondent. | C 07-5781 CRB (PR) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER** |

## INTRODUCTION

Petitioner, Jeffrey Jerome Blan, contends he was denied effective assistance of counsel on the ground his attorney failed to offer his out-of-court statement explaining his actions at the time he was arrested. The petition should be denied.

## STATEMENT OF THE CASE

On April 15, 2005, a Santa Cruz jury found petitioner guilty of first degree burglary and petty theft with a prior. Cal. Penal Code §§ 459, 666. Petitioner was also found to have served two prior prison terms, to have suffered two prior serious felony convictions which were also strikes, and

Memo of Points and Authorities – *Blan v. Kramer* – C 07-5781 CRB (PR)

to be ineligible for probation. Cal. Penal Code §§ 667(a)(1), 667.5(b), 677(b)-(i), 1203(e)(4); 2 CT 349, 353-59.[1]

The trial court sentenced petitioner to seven years in prison. 2 CT 426-28. Petitioner unsuccessfully pursued state direct and habeas review.

On November 20, 2006, in an unpublished opinion, the California Court of Appeal affirmed the judgment. Exh. D. The same day, the California Court of Appeal denied the state petition for writ of habeas corpus. Exh. H.

On December 26, 2006, petitioner filed petitions for review of the direct appeal and of the denial of his habeas corpus petition in the California Supreme Court. Exhs. E & I. That court denied review in both cases on February 7, 2007. Exhs. F & J.

On November 14, 2007, petitioner filed a Petition for a Writ of Habeas Corpus in this Court. On February 12, 2008, this Court issued an order to show cause as to why relief should not be granted.

### STATEMENT OF FACTS[2]

On August 10, 2004, at approximately 1:00 a.m., Alan Yang was walking up to his friends' apartment at 141 Chestnut Street. 2 RT 308, 336, 398. As he approached their first-floor apartment, he saw petitioner climbing out of the bedroom window of his friend, Joann Chou. Mr. Yang was on the walkway that leads to the residence when he saw petitioner with his feet and legs coming out of Ms. Chou's bedroom window. 2 RT 335-37, 362. Mr. Yang knew that Ms. Chou was not at the residence. 2 RT 336.

As Mr. Yang got closer, he saw petitioner put a metal object on the ground and then attempt to put the screen, which had been propped against the wall, back onto Ms. Chou's window. Mr. Yang confronted petitioner. 2 RT 338. He asked petitioner questions and engaged him in

---

1. Citations to "CT" and "RT" refer, respectively, to the clerk's and reporter's transcripts of petitioner's state conviction, lodged herewith as respondent's exhibits A and B, respectively.

2. The California Court of Appeal's statement of facts is set forth in that court's unpublished opinion, included as exhibit D at 1-3.

Memo of Points and Authorities – *Blan v. Kramer* – C 07-5781 CRB (PR)

1  conversation. 2 RT 363-64, 374. Petitioner picked up an object from the ground and put it in the
2  pocket of his sweatshirt. 2 RT 338, 355. Mr. Yang called "911" on his cell phone and followed
3  petitioner as he walked away. 2 RT 340-41. As petitioner moved away, Mr. Yang heard what
4  sounded like change rattling in a metal jar. 2 RT 345. Petitioner jumped over a fence and Mr. Yang
5  gave the direction of travel as well as petitioner's physical description to the "911" dispatcher. 2
6  RT 340-41, 343-44.

7        When the police arrived at the scene, Mr. Yang flagged them down and pointed them in
8  the direction that petitioner had fled. 2 RT 345. The police found petitioner crouching down on the
9  second floor of a nearby apartment complex. He was slightly out of breath, had sweat on his face
10 and shirt, and was holding a dark sweatshirt. 3 RT 529-31. The police detained petitioner and Mr.
11 Yang identified him as the person whom he had seen coming out of Ms. Chou's bedroom window.
12 2 RT 308-10, 346-48. The police found $22.50 in change in petitioner's pants pocket – mostly in
13 quarters. 2 RT 311; 3 RT 509. Petitioner told the police he was a transient. 3 RT 511.

14       When Ms. Chou returned home, she noticed that a metal coin box was missing from the
15 desk in her room. The box contained change, mostly quarters, and she had left it with the lid off
16 when she left the apartment. 2 RT 401-07. There were also two cameras, a computer, and a box of
17 checks on Ms. Chou's desk, which was between six and eight feet from the window. These items,
18 however, were not taken. 2 RT 314, 413-16. Ms. Chou testified that when she left her apartment
19 at approximately 11:00 p.m., she had left her bedroom door and window open and left a light on in
20 her room. 2 RT 399-401. She had also left a fan on her windowsill, which had been toppled over
21 onto her bed. 2 RT 407. Ms. Chou did not know petitioner. 2 RT 311, 408.

22       Emily Enns, with whom Ms. Chou shared the apartment, was present in the apartment at
23 the time of the offense. She did not hear anything unusual. 2 RT 386-87.

24    **Defense Case**

25       Eddie Tom Tomas, the maintenance supervisor of the 143 Chestnut Street apartment
26 complex, testified that he recognized petitioner. 3 RT 540-41. Somewhere between one week and
27 one month prior to the offense in this case, Mr. Tomas had found petitioner sleeping on the floor in
28 apartment 139 of building 153 – a vacant unit in the apartment complex. 3 RT 541, 546, 551.

1  Petitioner was cooperative when asked to leave. 3 RT 542.

2  When initially interviewed by a defense investigator, Mr. Tomas approximated that he had
3  found petitioner sleeping in the vacant apartment in approximately April 2004. 3 RT 545. After
4  thinking about it and looking at paperwork regarding when different units were vacant, Mr. Tomas
5  thought it must have been in July or early August 2004. 3 RT 545. Mr. Tomas also told a police
6  investigator that he had seen petitioner at a community center around Halloween or Thanksgiving.
7  3 RT 547-49, 553-54, 559. After talking to the defense, he realized that petitioner had been in
8  custody since August 10, 2004. After becoming aware of this inconsistency, Mr. Tomas believed
9  that he must have seen petitioner at the community center a week after he had found him sleeping
10 in the apartment. 3 RT 547-48, 556, 559.

11 Mr. Tomas was impeached with a felony conviction for driving under the influence and
12 for felony evading police. 3 RT 548, 556.

13 The buildings in the Chestnut Street apartment complex looked similar and had similar
14 landscaping. 2 RT 395-96.

15

16 **STANDARD OF REVIEW**

17 A federal court may grant a writ of habeas corpus to a state prisoner only if the state
18 court's rulings "resulted in a decision that was contrary to, or involved an unreasonable application
19 of, clearly established Federal law, as determined by the Supreme Court of the United States" or
20 were "based on an unreasonable determination of the facts in light of the evidence presented" in the
21 state courts. 28 U.S.C. § 2254(d). Under the "contrary to" clause, a state court's decision is
22 contrary to federal law if it "contradicts the governing law set forth in our cases" or if it "confronts
23 a set of facts that are materially indistinguishable from a decision of this Court and nevertheless
24 arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).
25 That test does "not require citation of our cases—indeed, it does not even require *awareness* of our
26 cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."
27 *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). The ultimate controlling authority is the holding
28 of the Supreme Court's cases at the time of the relevant state-court decision, not the dicta. *Carey*

1  *v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 653 (2006). The state courts are presumed to "know and
2  follow the law," and the standard for evaluating state-court rulings, which are given the "benefit of
3  the doubt," is "highly deferential." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). In
4  order to warrant habeas relief, the state court's application of clearly established federal law must
5  be not merely erroneous, incorrect, or even "clear error," but "objectively unreasonable." *Lockyer*
6  *v. Andrade*, 538 U.S. 63, 76 (2003). It is the habeas petitioner's burden to make that showing.
7  *Visciotti*, 537 U.S. at 25. Also, state court factual determinations are presumed correct unless
8  rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ARGUMENT

## PETITIONER RECEIVED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Petitioner contends his trial counsel was ineffective in failing to offer his statement to Yang that he had been "playing a trick on his friends" and that his friend "Erik" lived in the apartment, as non-hearsay or under a hearsay exception. Pet. at 6; attachment to Pet. at 23-24. These statements were admitted into evidence in petitioner's first trial that resulted in a hung jury. As the California Court of Appeal concluded, however, the statements were inadmissible hearsay. Accordingly, trial counsel was not ineffective in failing to seek their admission in petitioner's second trial. Petitioner's contention to the contrary is without merit.

A successful claim of ineffective assistance of counsel has two components. First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). In evaluating counsel's performance the court must be highly deferential, avoiding the "distorting effects of hindsight" and "indulg[ing] in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Id*. at 689. The relevant inquiry is not what defense counsel could have done, but whether the choices made by defense counsel were reasonable. *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998); *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001) (defendant bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy). Second, the defendant must show that counsel's deficient performance deprived him of a fair trial; i.e., "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Id*. at 697; *see Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986) (*Strickland* imposes a "highly demanding" standard upon petitioner to prove "gross incompetence").

On federal habeas, petitioner must show that the state court applied *Strickland* to the facts of the case in an objectively unreasonable manner. *Woodford v. Visciotti*, 537 U.S. at 24; *see Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curium); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

Here, petitioner has shown neither deficient performance by his trial counsel, nor that trial counsel's performance deprived him of a fair trial. As such, petitioner fails to show an unreasonable application of *Strickland* by the state court, and his petition must be denied.

### A. Procedural Background

The prosecution moved in limine to exclude any hearsay statements by petitioner unless offered by the People as being against petitioner's interest. 2 CT 232 (People's In Limine # 3). The trial court tentatively granted the motion subject to the People making a timely objection. 2 CT 232, 291; 1 RT 21. The prosecution also moved in limine to exclude any questions about "Erik" on the ground that it would elicit hearsay and not be relevant. 2 CT 271 (People's In Limine #3). The trial court granted the motion finding the statement by petitioner was "self-serving" and offered to prove the truth of the matter asserted. 2 CT 271, 291; 1 RT 25-26.

At trial, no evidence was offered or introduced regarding the substance of the conversation between petitioner and Mr. Yang.

### B. The California Court Of Appeal Reasonably Concluded Petitioner Received Effective Assistance Of Counsel

On direct appeal, the California Court of Appeal rejected petitioner's claim of ineffective assistance of counsel on two grounds. First, the court found that because the trial court had indicated in its in limine ruling that it considered the statement hearsay, "any offer by defense counsel to admit the statement on direct appeal would have been futile." Exh. D at 4; *see United States v. Quintero-Barraza*, 78 F.3d 1344, 1349 (9th Cir. 1995) (counsel is not required to bring an unavailing motion); *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) (failure to make a motion is not ineffectiveness if making the motion would be futile). Second, the California Court of Appeal found trial court found that petitioner's out of court statement was "a classic example of hearsay evidence,"

and did not fall within any exception to the hearsay rule. Exh. D at 4-5.[3/] The court explained the basis of its ruling under California evidence law as follows:

> Hearsay is defined in the Evidence Codes as "a statement that was made other than by a witness while testifying at the hearing and that is offered for the truth of the matter stated." ([Cal.] Evid. Code, § 1200.) Here, defendant's statement to Yang when he was found climbing out of a bedroom window at 1:00 o'clock in the morning that he was "playing a trick on a friend," is an express declaration of defendant's conduct and motive. The only relevance the statement has is to prove the truth of the matter asserted therein-that defendant was not in fact burglarizing the apartment, but instead was playing a trick on his friend. Under these circumstances, the statement is hearsay, and the trial court properly ruled that it should be excluded from evidence.
>
> In addition, there is no exception to the hearsay rule that would allow the admission of this evidence. Defendant asserts the statement qualifies as an exception to the hearsay rule as both a contemporaneous statement ([Cal.] Evid. Code, § 1241), as well as a statement of his state of mind ([Cal.] Evid. Code, § 1250, subd. (a)). With regard to the state of mind exception, even if the statement would quality under the exception, it would not pass the requirement of trustworthiness in [California] Evidence Code section 1252. The circumstances under which the statement was made demonstrate it lacks trustworthiness. Specifically, defendant was highly motivated to fabricate the motives for his actions when he was caught coming out of a bedroom window early in the morning and attempting to replace a screen on the window. Therefore, the statement would not be admissible under the state of mind exception.
>
> Moreover, defendant's statement also does not fall within the contemporaneous statement exception under [California] Evidence Code section 1241, which provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: (a) Is offered to explain, qualify, or make understandable conduct of the declarant; and (b) Was made while the declarant was engaged in such conduct." Here, defendant's statement that he was "playing a trick on his friend," does not accompany the conduct, in that he was putting the screen back on the window at the time he made the statement was made. In short, the statement was not made while defendant was committing the act of "playing a trick," and therefore, it does not fall within the contemporaneous statement exception.
>
> Because defendant's statement was hearsay that would not fall within any exception to the hearsay rule, defense counsel's failure to offer the statement as evidence in the second trial was a sound and reasoned decision, and did fall below the objective standard of reasonableness under prevailing professional norms.

Exh. D at 4-5.

Federal habeas corpus does not ordinarily lie to review questions about the admissibility of

---

3. This Court must look to the last reasoned state court decision as the basis for the state court judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Here, the last reasoned decision in the state court was the California Court of Appeal's unpublished decision which denied petitioner's direct appeal on this issue. Exh. D.

Memo of Points and Authorities – *Blan v. Kramer* – C 07-5781 CRB (PR)

evidence under state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *see also Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991) ("We are not a state supreme court of errors; we do not review questions of state evidence law. On federal habeas, we many only consider whether the petitioner's conviction violated constitutional powers."). Accordingly, this Court must defer to the state court's interpretation of its own evidence law.

Likewise, petitioner has failed to demonstrate prejudice within the meaning of *Strickland*, even if he could show some deficiency on the part of his trial counsel. As found by the California Court of Appeal, his out-of-court statements were inadmissible hearsay. Similarly, in granting the prosecution's motion in limine to preclude admission of petitioner's out-of-court statement to Mr. Yang, the trial court expressed its belief that the statement was "self-serving" and "offered to prove the truth of the matter asserted." 1 RT 25-26. As such, petitioner cannot show a reasonable probability that but for defense counsel's omission, the result of the proceeding would have been different. As such, he was not prejudiced by defense counsel's failure to press for the admission of the statement.

Petitioner fails in his attempt to bolster his claim of prejudice by highlighting that in his first trial, where testimony was admitted regarding his hearsay statement to Mr. Yang, the jury was unable to reach a verdict. This analysis is flawed. It is not possible to explain the jury's inability to reach a verdict in the first case with any certainty. And to parse out the differences between trials in an attempt to do so cannot yield sufficiently certain conclusions such that they should be relied on in an assessment of prejudice. The strength of the prosecution's proof at trial is a matter for *judicial* assessment – and that assessment cannot turn on a comparison of the reactions of different juries to different presentations of the evidence. *See Strickland v. Washington*, 466 U.S. at 695 ("[t]he assessment of prejudice . . . should not depend on the idiosyncracies of the particular decisionmaker . . . ."); *Harrington v. California*, 395 U.S. 250, 254 (1969) (alleged prejudice must be based on court's own reading of the record and on what seems to have been the probable impact on the minds of an average jury); *Schneble v. Florida*, 405 U.S. 427, 431-432 (1972) (same).

For all these reasons, the state court's rejection of petitioner's ineffective assistance of counsel claim was not unreasonable. His petition must be denied..

Memo of Points and Authorities – *Blan v. Kramer* – C 07-5781 CRB (PR)

**CONCLUSION**

Accordingly, respondent respectfully requests that the petition for writ of habeas corpus be denied with prejudice.

Dated: July 30, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

PEGGY S. RUFFRA
Supervising Deputy Attorney General

**/s/ Lisa H. Ashley Ott**

LISA H. ASHLEY OTT
Deputy Attorney General

Attorneys for Respondent